IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FOREST GUARDIANS, et al.,

        Plaintiffs,

vs.                                                        Civ. No. 06-231 WJ/KBM

UNITED STATES FISH AND WILDLIFE SERVICE,

        Defendant,

   and

THE PEREGRINE FUND,

        Defendant-Intervenor.

**MEMORANDUM OPINION AND ORDER DENYING CLAIMS ONE, TWO AND SIX OF PLAINTIFFS' PETITION FOR REVIEW OF AGENCY ACTION AND GRANTING CLAIM THREE IN REGARDS TO THE STATE OF TEXAS**

THIS MATTER comes before the Court on Plaintiffs' Petition for Review of Agency Action ("Petition") (Doc. 46). The Court, having reviewed the instant Petition, Defendant and Defendant-Intervenor's Responses (Doc. 50, 53), Plaintiffs Replies (Doc. 59, 60), the May 20, 2008 oral arguments, the relevant law, and otherwise being fully informed, hereby denies claims one, two and six of the instant Petition and grants claim three in regards to critical habitat designation in the State of Texas.

**BACKGROUND**

This case involves the majestic Northern Aplomado Falcon ("Falcon"). Defendant United States Fish and Wildlife Service ("FWS" or "Defendant") declared the Falcon an endangered species in 1986. 50 C.F.R. § 17.11; 51 Fed. Reg. 6686 (Feb. 25, 1986). At that time, the Falcon had been extirpated as a breeding species in the United States for over 30 years.

71 Fed. Reg. 42298-99; 51 Fed Reg. 6686-88.  Thus, Defendant also found "that designation of critical habitat is not prudent for the northern aplomado falcon at this time."  51 Fed. Reg. at 6688.  Plaintiffs filed a September 2002 "Petition to the U.S. Fish and Wildlife Service to Revise the Critical Habitat Designation for the Northern Aplomado Falcon" ("2002 Petition").  AR Doc. 55; Bates #509.  The 2002 Petition requested that Defendant consider critical habitat designation within Texas, New Mexico and Arizona.  On February 9, 2005, Defendant proposed the following in the Federal Registry:

> We, the U.S. Fish and Wildlife Service (Service), propose to reintroduce northern aplomado falcons (Falco femoralis septentrionalis) (falcon) into their historic habitat in southern New Mexico and Arizona with the purpose of establishing a viable resident population. If this proposed rule is finalized, we may release captive-raised falcons as early as the summer of 2005 and release up to 150 additional falcons annually in the summer and/or fall for 10 or more years thereafter until a self-sustaining population is established. We propose to designate this reintroduced population as a nonessential experimental population (NEP) according to section 10(j) of the Endangered Species Act of 1973 (Act), as amended. The geographic boundary of the proposed NEP includes all of New Mexico and Arizona.

70 Fed. Reg. 6819 (Feb. 9, 2005).  On July 26, 2006, the Endangered Species Act ("ESA") 10(j) classification was finalized for New Mexico and Arizona.  71 Fed. Reg. 42298.  Plaintiffs filed the instant Petition for Review of Agency Action on October 22, 2007.  (Doc. 46).  Within the instant Petition, Plaintiffs make, *inter alia*, the following claims:  claim one alleges Defendant violated the Endangered Species Act ("ESA") by not responding to the petition within 90-days; claim two alleges Defendant violated the ESA by not responding to the petition within 12-Months; claim three alleges Defendant unlawfully withheld or unreasonably delayed action in violation of the Administrative Procedure Act ("APA"); claim six alleges Defendant violated the ESA by determining that the experimental population of Northern Aplomado Falcons authorized by FWS in Arizona and New Mexico was not essential to the continued existence of the species

while not relying on the best available information.

**LEGAL ANALYSIS**

Plaintiffs, in the instant Petition, argue that "[i]f [Plaintiffs' 2002 Petition] is considered as one to revise FWS' designation of zero critical habitat for the Falcon then the ESA's statutory deadlines found in U.S.C. § 1533(b)(3)(D)(i) & (ii) govern FWS' review of the petition and Plaintiffs' first and second claims for relief are applicable. Alternatively, if the Court considers [Plaintiffs' 2002 Petition] as an original petition to designate critical habitat in the first instance filed under the APA rather than the ESA, then the unreasonable delay provisions of the APA apply and Plaintiffs' third claim for relief is applicable. See 5 U.S.C. §§ 553(e) & 706(1)." (Doc. 46). 16 U.S.C. § 1540 (g)(1)(C) states in pertinent part: "(g) Citizen suits[:] (1) Except as provided in paragraph (2) of this subsection any person may commence a civil suit on his own behalf– . . . (C) against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary." 16 U.S.C. § 1533(b)(3)(D)(i)-(ii) states in pertinent part:

> (b) Basis for determinations . . . (3)(D)(i) To the maximum extent practicable, within 90 days after receiving the petition of an interested person under section 553(e) of Title 5, to *revise* a critical habitat designation, the Secretary shall make a finding as to whether the petition presents substantial scientific information indicating that the *revision* may be warranted. The Secretary shall promptly publish such finding in the Federal Register. (ii) Within 12 months after receiving a petition that is found under clause (i) to present substantial information indicating that the *requested revision* may be warranted, the Secretary shall determine how he intends to proceed with the *requested revision*, and shall promptly publish notice of such intention in the Federal Register.

Id. (emphasis added). It is undisputed that there is no critical habitat designation in Texas, New Mexico and Arizona. Logically, it is impossible to revise something that does not exist. Thus, the ESA deadlines codified in 16 U.S.C. § 1533(b)(3)(D)(i)-(ii) cannot apply to Plaintiffs' 2002

Petition.  Accordingly, the Court denies claims one and two of Plaintiffs' Petition for Review of Agency Action.

Plaintiffs' 2002 Petition is appropriately viewed as a petition for the issuance of critical habitat status in Texas, New Mexico and Arizona.  The ESA provides no mandatory deadlines for responding to such a petition.  Instead, Plaintiffs must rely on deadlines mandated by the APA.  5 U.S.C. § 553 (e) states:  "(e) Each agency shall give an interested person the right to petition for the *issuance*, amendment, or repeal of a rule."  Id. (emphasis added).  5 U.S.C. § 706(1) states: "The reviewing court shall--(1) compel agency action unlawfully withheld or unreasonably delayed[.]"  New Mexico and Arizona cannot be simultaneously designated under the current 10(j) classification and as critical habitat for the Falcon.  If the Court upholds the current 10(j) classification, claim three of the instant Petition is moot in regards to New Mexico and Arizona.[1]  All parties acknowledged as much at the May 20, 2008 hearing.  Defendant concedes that it must eventually provide Plaintiffs with an answer to the 2002 Petition in regards to Texas.  Thus, the lone issue facing the Court at this juncture on claim three is whether Defendant has "unreasonably delayed" its response to the 2002 Petition in regards to Texas.

In Forest Guardians v. Babbitt, 174 F.3d 1178, 1191 (10th Cir. 1998) the Tenth Circuit held that "once a court deems agency delay unreasonable, it must compel agency action."  In coming to this conclusion, the Tenth Circuit commented on the so-called TRAC factors associated with analyzing whether agency delay is unreasonable.  Id. (commenting on the six

---

[1] The Court would uphold the current 10(j) designation by finding for Defendant on claims four, five and six of the instant Petition.  For the reasons stated below, the Court finds for Defendant on claim six.  However, this Memorandum Opinion and Order does not rule on claims four and five.  If the Court eventually finds for Plaintiff on claims four or five, it will revisit claim three in regards to New Mexico and Arizona.

4

six factors the District of Columbia recognized in Telecommunications Research Action Ctr. v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984) [" TRAC "]).  The Tenth Circuit further noted that the "hexagonal standard of TRAC may be [helpful] when considering a discretionary time schedule."  Babbitt, 174 F.3d at 1191.  The Defendant, in its Response, argues that "no published Tenth Circuit decicion" explicitly utilizes the TRAC factors, and that "even assuming that the TRAC factors may be "helpful" in analyzing the issue of unreasonable delay, they do not help Plaintiffs here."  (Doc. 53).  In the instant case the Court is dealing with a discretionary time schedule.  Although the Court cannot read Babbitt as requiring the utilization of the TRAC factors, they are nonetheless useful in analyzing whether Defendant "reasonably delayed" its response to the 2002 Petition.

> The TRAC factors are as follows:
>
> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

TRAC, 750 F.2d at 80 (internal citations and quotes omitted).  Having considered the thoughtful guidelines laid out in the TRAC factors, and even assuming the Tenth Circuit disallows the use of such factors in this case, the Court finds that the available evidence displays unreasonable agency delay and mandates the Court to compel agency action.  Nearly six years have passed since Plaintiffs filed the 2002 Petition.  Wholly ignoring the TRAC factors, common sense and

Defendant's lack of a sufficient explanation in regards to Texas mandate that this period constitutes unreasonable delay.  Although at this stage the Court cannot find "impropriety lurking behind" the lack of response, malfeasance is not necessary to deem Defendant's delay unreasonable.  In sum, the Court finds Defendant's failure to respond to the Plaintiffs 2002 Petition is unreasonable agency delay, and under <u>Babbitt</u> the Court must order Defendant to respond in regards to critical habitat designation in Texas.

Plaintiffs, in the instant Petition, devote less than a page to claim six, citing no case law. Instead, Plaintiffs argue that Defendant did not designate the experimental Falcon population as essential because doing so would not foreclose the possibility of critical habitat designation.  In making this sparse argument, Plaintiffs state that their "claim that [the United States Fish and Wildlife Service] failed to consider the best available information before determining its experimental population of Falcons was nonessential is analogous to Plaintiffs' claim that FWS pre-determined the outcome of its [National Environmental Policy Act] analysis. . . ."[2] (Doc. 46).  16 U.S.C. § 1539(j)(2)(B) states:  "Before authorizing the release of any population under subparagraph (A), the Secretary shall by regulation identify the population and determine, on the basis of the best available information, whether or not such population is essential to the continued existence of an endangered species or a threatened species."  50 C.F.R. § 17.80(b) states:  "(b) The term 'essential experimental population' means an experimental population whose loss would be likely to appreciably reduce the likelihood of the survival of the species in

---

[2] Claim seven of the instant Petition alleges that Defendant violated the National Environmental Policy Act by predetermining the 10(j) status of the land before going through the mandatory statutory process.  This Memorandum Opinion and Order does not address the merits of claim seven.

the wild. All other experimental populations are to be classified as 'nonessential.'" Plaintiffs have offered no evidence establishing that Defendant did not use the "best available evidence", nor that the Falcons already released in New Mexico are "essential" under the definition provided in 50 C.F.R. § 17.80(b). Plaintiffs neglected to argue the merits of claim six at the May 20, 2008 hearing. It is not enough for Plaintiffs to simply piggyback claim six onto the logic of claim seven. Accordingly, the Court denies claim six of the instant Petition.

**IT IS THEREFORE ORDERED** that Plaintiffs Petition for Review of Agency Action (Doc. 46) is hereby denied as to claims one, two and six. Further, the Court hereby grants claim three in regards to critical habitat designation in the State of Texas. In granting claim three regarding critical habitat designation in Texas, the Court is only ordering FWS to answer, *within 30-days*, Plaintiffs' 2002 Petition as to Texas. In other words, the Court is not requiring FWS to designate critical habitat in Texas, but rather the Court is requiring FWS to answer Plaintiffs' 2002 Petition regarding whether critical habitat designation for the Falcon should be issued in Texas.

_____
WILLIAM P. JOHNSON
UNITED STATES DISTRICT JUDGE